Good morning, Your Honors. Good morning. Chair Frosen calls for hearing on the extended Hamilton on behalf of the appellant, Open Text. I would like to reserve three minutes for a public comment. May it please the Court, Your Honors, there's really two issues that we're going to focus on today, so I am committing one of which is a straightforward case rule of law right out of the Supreme Court's decision in First Pontius v. Kaplan, which the question is who decides arbitrability. The second issue is whether the award is, quote, completely irrational, which in the Ninth Circuit means that it fails to derive its essence from the party's contract. Now, with respect to the first option decision that I'm going to focus most of my time today, the decision must be reversed unless the appellee can show that the party is clearly and unmistakably intended to do arbitrariness despite arbitrageability. So I want to spend just a moment on the background facts because they're uncontroverted and relatively simple. Appellee Kevin Cochran signed the Deployment Degree with Open Text on December 5, 2012. He had an arbitration clause calling for AAA arbitration. It is undisputed that the document referred generally to Cochran having an opportunity to earn variable compensation, but it contained no details or incentive compensation agreement, and that agreement supplied the terms and conditions and all of the details governing Cochran's variable compensation rights. It stated clearly and unambiguously that it represented the party's entire understanding and superseded all prior representations, promises, or understandings with respect to variable compensation. So just how did Kevin Allison and the Deployment Agreement expressly incorporate the AAA rules? Well, Your Honor, the Deployment Agreement did incorporate the AAA rules, and it was superseded. It was superseded by the incentive compensation agreement. That document clearly and unambiguously stated that it superseded it. And it superseded the Employment Agreement? With respect to variable compensation, and in particular with respect to the calculation of variable compensation. Did it expressly say in this agreement, if there's a conflict between this agreement and the Employment Agreement, this agreement controls? It did not, Your Honor, because the agreement said, and I'm referring to the very last paragraph of the agreement, that it supersedes all prior understandings with respect to the subject matter. That's an off-hundred-pundit fact law with respect to the subject matter? Correct. And the subject matter is variable compensation, and with respect to the calculation in particular, there's a different resolution, right? So you mean a different resolution provision? Correct, it's a resolution provision. So it says that to the extent that there are disputes concerning the amount of compensation owed, that needs to be raised to a manager, and it needs to be resolved through the compensation review board. And it uses a bunch of words that we see often in arbitration agreements. It says it's subject to final and binding resolution by the compensation review board. And just as if this was an arbitration agreement, it happens to the managing boards that would send this to arbitration, and because it's a different resolution process, it sends to someplace else. When you're asking us to interpret the contract, is that really what we're here to do? Absolutely, Your Honor. In fact, that's really, you put your finger on the key question under first options, which is who decides arbitrability? We have an AAA says that the arbitrator gets to decide arbitrability, correct? That is absolutely correct under the employment agreement. But once that employment agreement is superseded, we now have a new agreement. The AAA has no jurisdiction over the ICA. There's no AAA clause, and therefore it's up to the courts to decide whether this agreement sets the place for arbitration, whether it's pro or non- agreement. What's that? It's really in the pro or non-agreement. And it's signed as an agreement, it says it supersedes, it has all of the embodiment of an agreement. But that's not, the court doesn't have to decide that. He was employed pursuant to the employment agreement. He was employed pursuant to the employment agreement. By this right, it's variable compensation. It's governed by this right. We can make this a much simpler analogy, your honors. Let's just say, for example, we had Uber. And Uber, because if you use the app, it says any customer's free to arbitrate a dispute. And due to public outcry, here in California, Uber says, you know what, we're going to override that term and condition. We're going to let people in California go to courts. We're not going to have that separate arbitration provision. And then Uber brings an arbitration against you. And Uber says, well, my arbitration is under that original agreement. I'm going to come on your claim against you under, and I'm going to have the arbitrator decide. There would be no question in that circumstance that it's up to the court to decide what is the effect of the superseding agreement. The District Court did not acknowledge that one could read the documents differently than the arbitrator did, but said that the arbitrator had the ability to determine the scope of his authority. And what the arbitrator said was not irrational. Why would the District Court want to do that? Because first option says it's not an issue for the arbitrator. So there's no definition of the arbitrator. First option says that anything else, anything at all about arbitrability, goes to the court. It's the opposite of doubts about whether something is subject to arbitration clause. Arbitrability is an issue for the court because it's clearly, unmistakably the effect of the parties to do otherwise. Once the parties superseded their agreement or the new agreement, it clearly was not clear and unmistakable that the parties intended for the arbitrator to decide, and it was the District Court's responsibility at that point to give us our analysis. Yeah. And also, can I ask you, in the May 2nd letter, 2014 letter,  Mr. Cochran's separation of service would be covered by the employment agreement. What do we do with that, I understand. Does that refer me to the employment agreement to determine the terms of separation of service? That's a good question, Your Honor. So what happened was Mr. Cochran gave notice, and he was told, you don't get incentive compensation because you're not going to be here on the payment date. And then three weeks of arguing back and forth, he actually begged senior management, can you go to the CBO and try to arrange something for me? And they came back and said, here's a self-offer for you. We will give you a percentage of the variable compensation. You'll sign a release. All the other terms and conditions of your employment agreement shall apply to the self-offer. He rejected it. It is no bearing, and even to the extent that it did have bearing, it's a question for the court. So what is the impact of this self-offer? First of all, what's the impact of the self-offer on the incentive compensation agreement? Before I sit down and save my time for rebuttal, I do want to just dispel the fiction that this award is based solely on the employment agreement and not on the incentive compensation agreement. Because first we recognize that part of the award is dependent on the incentive compensation agreement. In view of the arbitrator's psych-arbitrability, and if we look at page 120 of the record, the arbitrator writes when he's describing the decisions, open text argued, open text later adopted, worldwide compensation policy dated July 1, 2013, an incentive compensation agreement of September 29, 2013, not caught in this earlier agreement, nor from the terms of this termination and separation of compensation. The arbitrator finds this argument unpersuasive, and as a result of that, he often answers essentially, and he disregards the unambiguous requirements of the ICA that he has to employ. But on the next page of the decision, this is page 121 of the record, he writes for fiscal year 2014, July 1, 2013, open text issued, WICP dated July 1, 2013, and the ICA dated September 29, 2013. Companies agreed that these two documents provide the terms and formula for determining a given employee's bonus, i.e., terrible compensation. Of the two documents, the ICA provides the specific formula for determining compensation. And he then continues, basically ICA, the interesting calculations are, so it was clearly based on that document without arbitration clause, and the question, therefore, is for the district court to decide. Thank you. We'll take one more time for a vote. Thank you. All right, Your Honors. All right. May it please the Court. My name is Jeffrey Fawcett, and I represent Appellee and Petitioner Q in Congress. Before turning to the arguments that were raised by opposing counsel, and the questions from the Court, I'd just like to start with Judge Alston in his order, which is, with a sense of outrage, and a sense of dismay, that I'm here at all. For decades, for my entire legal career, employers, like Open Text, have insisted that every employee sign an arbitration agreement, and their customers do it, too. And then they tell courts, you have to enforce those agreements. We're going to take these disputes out of the courts and put them into this private arbitration system. Mr. Cochran followed that agreement. We followed a demand for arbitration. We arbitrated the dispute, and we won. And that was two years ago. More than two years ago. So now, for two years, and thousands of dollars in attorney's fees, Mr. Cochran still has not received his arbitration agreement. This is a highly unusual situation of an employer trying to escape the impact of its arbitration agreement. And this should not be allowed to continue for two reasons. First, the parties clearly and unmistakably agreed to arbitrate the issue of arbitrability. Second, the resulting arbitration award was not completely rational. And you need to respect that. How's the court's response to opposing counsel's reference to the separate composition agreement as superseding the employment agreement on that one issue? Your Honor, frankly, I don't believe that argument makes any sense. And it's also inconsistent with their position, both before the dispute arose and with their position once the arbitration demand was issued. After we demanded arbitration, Open Text responded to that demand and stated that Open Text accepts the jurisdiction of the Tribunal to determine whether Mr. Cochran is entitled to any variable compensation under his employment agreement. And they went on to say, but the calculation of that compensation is beyond the Trump administration's authority. So, but the first part of that admission is important. It's critical here. They accepted that there was jurisdiction for our arbitration demand, at least in part. And the only basis for that is the arbitration agreement and the employment agreement. But, well, with respect to the argument now that the compensation agreement superseded everything in the employment agreement, in the original employment agreement, does the compensation agreement have a separate dispute resolution provision? It doesn't. What it contains is a statement that there's been a calculation of a bonus that the employee disputes, and they can take that dispute to the Compensation Review Board. There was no bonus calculation made here. The incentive compensation plan is clearly set up to deal with disputes with existing employees. Because, in fact, it says that if you're not there when the variable compensation is paid, you don't get it. Mr. Cochran had a different deal. He had a specific 29-page employment agreement that said that if he terminates employment, various conditions in which he could do that and the accrued payments that would be made to him would differ depending on the terms of that. Let me make sure I understand. Is the dispute resolution agreement that was given a compensation agreement down with the dispute over the amount of compensation? Yes, Your Honor. It specifically references a calculation. And so your position is that this is not such a dispute? No, Your Honor, it is not. Because this is a dispute over whether or not he was entitled to pay? Exactly. For example, it's after he was terminated, right? After he resigned, yes, Your Honor. After his employment was terminated, I should say. Yes, after his employment was terminated. The employment agreement specifically says in terms of the accrued payments that he's entitled to receive any variable compensation earned but not yet paid as of the date of his separation. And that was the position he took. In response to that position, OpenTex, the senior vice president for global human resources, sends him a letter that says, here's the terms under which you are going to be terminated from your employment. They're governed by the employment agreement. There's no mention in that letter whatsoever regarding the incentive compensation plan. And it says, it goes on to state all the ways in which OpenTex is going to abide by the employment agreement. The only exception, and it's clearly identified in the letter as an exception, comes with the variable compensation where OpenTex proposes that Mr. Cochran accept that his VC be prorated and capped at 100%. So the 100% number comes from the employment agreement. It's $200,000. But he said, we're not going to exceed that no matter what the calculation might otherwise be. And we're going to prorate it to not include the last two months of the year because you are on guard duty. So what's your position on the admissibility of the main letter? Your Honor, I don't think there's any question about it being admissible for the arbitrator to determine the intention of the parties in the employment agreement. It's under contract interpretation law. Parties pre-dispute actions are clearly relevant to what they meant in the contract. This letter came up before this arbitration dispute arose. And what the letter reflects is the party's intentions that the employment agreement and not the ICP would govern Mr. Cochran's termination and impugnance due to him. Now, they then accepted our position that there should be arbitration of something. They certainly said that if we were entitled to arbitrate whether Mr. Cochran was entitled to any compensation for this employment agreement, that arbitration agreement, as the court has noted, contains an express delegation to the AAA rules. And that has been held repeatedly since first options. In Oracle, it didn't involve the AAA rules. It involved other rules. And in the recent Brennan case, this court specifically said that when parties say they were not liable to AAA rules, that means they clearly, and I must say completely, agreed to arbitrate arbitrability. Once we get to that point, everything else in this case happens inside the arbitration. But if there were a dispute over something else, whether or not he was required to drive a truck, that would clearly be governed by the original employment agreement. Is that correct? Yes, Your Honor, and when we first embarked on this matter, Mr. Cochran was not sure if they were going to pay for his own paid vacation. He wasn't sure if they were going to pay for certain other benefits that were called for in the employment agreement. If those things had not happened, there would have been part of this arbitration, and that would have all been subject to the employment agreement. At the end of the day, when it came time for that arbitration, the only issue in dispute was the variable compensation called for by the employment agreement. So once we have agreed to arbitrate arbitrability, everything else in this case, as I said, happens inside that arbitration. And this court and other courts have all said that those decisions, the decision about arbitrability by the arbitrator, is the same deference as every other decision that arbitrator makes. And if the arbitrator had said, I'm interpreting these agreements differently, then I don't think that this is within the scope of the arbitration clause. If it deals with compensation, that would be as binding as this decision. Yes, Your Honor. If the arbitrator had agreed to the open text position and disagreed with our position, we wouldn't have a greater argument than they do about that. That would be within the scope of the arbitrator's decision. It would be entitled to the same deference as every other decision that he made. It's entitled to. So even if the arbitrator could make mistakes or errors, as long as it's not irrational or completely irrational, it would still be a valid award. Is that what the law says? Yes, Your Honor. That's the law we have now. That's the world we live in. Whether we like it or not, Mr. Cochran, we thought you liked it when we got the award here. It was a pretty big award. It was a pretty big award. The arbitrator agreed with us in his evaluation of the evidence. He didn't agree with open text. But we're not here today to talk about that. In fact, it's entirely impermissible for this Court to talk about what the arbitrator did inside that arbitration as long as it's not completely irrational. And when you say completely irrational standard, I've yet to see a case where it was met It seems to be out there for some future case where some arbitrator writes in his award and he's deviating from the contract and deviating from the law. I'm going to do this no matter what anybody says. That's not what we have here. The arbitrator here carefully examined all of these contracts, listened to arguments from both sides, and agreed with our position that the employment agreement governed as disputed. That Mr. Cochran was entitled to variable compensation and based on the evidence submitted to him he calculated that amount to be $438,000 and we're still waiting to be paid on that. So those are the further questions, Your Honor. If there's none, thank you, Your Honor. I'd just like to ask that this report be affirmed in all respects. Thank you. Thank you, Your Honors. I'm just collecting a few things that were said by my adversary just now. He said that this award and this arbitration was not about the calculation. I would just direct the Court to R-121 and R-122 which is all about calculation and those calculations are based on the ICA and once he needs to go to the ICA for that document, no arbitration clause. It's an issue that the Court did sign and the other arguments that we heard about the settlement letter and the missability of the settlement letter that's what's important again. It is close known to the interpretation of the ICA to whether that is effective or not effective in the context of the arbitration agreement. Remember, it's not a deferential standard. It's clear and unmistakable with all doubts being resolved in favor of the Court and once you have this new agreement it's not clear and unmistakable and if they want to say, well she's on this position of the arbitration but we have a settlement letter and by the way, I would just direct the Court to R-4 which discusses all such decisions. My adversary said, this is before a dispute arose this shows our true feelings. The judge also wrote that there was a dispute  Three weeks later, open text said covering the letter attempted to resolve the dispute. It's a matter of public policy it's not admissible but even if it were it's for the Court to decide and finally, it's not signed. There's no dispute that it's not signed and the ICA is very clear. No, there's no dispute at all. We sent an offer to try and settle the disagreement. It certainly matters because what he's trying to do is to say, don't look at the language of the ICA look at the settlement letter to interpret these documents. Does it matter that it's not signed? Well, intent is what's in the agreement, Your Honor. It's a matter of contract law. If the agreement says X and you make the offer of Y and it's not signed and the agreement says it's X unless you have a signed document saying otherwise then absolutely it's a matter of contract letter law. Thank you, Counselor. Thank you. Counselor, you're a helpful argument on this case. The case is argued and submitted for decision by the Court.
judges: Schroeder, Rawlinson, Drain